

**SO ORDERED.**

**SIGNED this 15 day of March, 2012.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**
_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# RALEIGH DIVISION

| | |
|---|---|
| **IN RE:** | |
| | **CASE NO.** |
| **JOHN PATRICK LAMANNA** | |
| **MADELEINE SAMBO ROJANO** | **11-02052-8-SWH** |
|       **DEBTORS** | |
| | |
| **RALEIGH PLUMBING & HEATING, INC.** | |
|     **Plaintiff** | **ADVERSARY PROCEEDING NO.** |
| **v.** | **H-11-00134-8-AP** |
| **JOHN PATRICK LAMANNA and EMPIRE INTERIORS, INC.** | |
|     **Defendants.** | |

## MEMORANDUM OPINION AND ORDER

The matters before the court are (1) the trial of the adversary proceeding brought by Raleigh Plumbing & Heating, Inc. ("RPH") against the male debtor[1] (the "debtor") to determine dischargeability pursuant to 11 U.S.C. §§ 1328(a)(2) and 523(a), and (2) the debtors' motion to avoid the judgment lien held by RPH pursuant to 11 U.S.C. § 522(f). A hearing took place on January 27,

---

[1] Empire Interiors, Inc. was dismissed as a defendant on September 27, 2011.

2012, in Raleigh, North Carolina.[2] For the reasons that follow, the court finds that debt in question is dischargeable and the lien will be avoided upon completion of the chapter 13 plan.

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(I), which this court may hear and determine.

## BACKGROUND

John Patrick LaManna filed a petition for relief under chapter 13 of the Bankruptcy Code on March 17, 2011. Several years prior to filing the petition, the debtor hired RPH to render plumbing services on a residential remodeling project for which the debtor served as contractor. Pursuant to the written contract between the parties, RPH performed a portion of the work and submitted an invoice to the debtor for $1,878.50 in January 2005. The debtor did not remit payment to RPH in a timely manner; rather, the debtor contacted RPH a few months later requesting completion of the plumbing work and was told that the work would not be completed until RPH received payment for the work done to date. On April 11, 2005, the debtor delivered a check to RPH for the amount due. After confirming by telephone call to the bank that the debtor had sufficient funds to cover the check, RPH returned to the job and completed the work on April 12, 2005. Three days later, on April 15,

---

[2] A motion for summary judgment filed by RPH was denied by order dated October 25, 2011.

2005, RPH received notification from its bank that a stop payment order had been placed on the $1,878.50 check from the debtor.[3]

Subsequently, RPH made several phone calls to the debtor pursuing payment, and was told that a replacement check would be provided. When no replacement check was forthcoming however, RPH instituted a civil action against the debtor in August 2005, in Wake County District Court. The debtor did not respond to the complaint, resulting in an entry of default on September 29, 2005, followed by RPH's motion for default judgment. Although the debtor appeared during the calendar call on that motion and requested a continuance, the court denied the request and the debtor was not present when the matter was heard later that day. The district court entered a default judgment against the debtor on November 18, 2005, as follows: actual damages of $2,890, punitive damages of $10,000, and attorney's fees of $750, all subject to daily interest until paid.

RPH filed this adversary proceeding pursuant to §§ 1328(a)(2), 523(a)(2)(A) and (B), contending that the judgment debt is nondischargeable because the debtor obtained services either through a fraudulent misrepresentation or the use of a materially false statement in writing regarding his financial condition. Essentially, RPH's position is that the debtor fraudulently induced RPH to finish the plumbing job by giving it a check for work previously performed when he fully intended to stop payment on the check - i.e., that the debtor misled RPH to render services with a false promise of payment. The debtor, on the other hand, asserts that he intended to pay RPH at the time he delivered the check. He explains that, from the beginning of the project, the homeowner requested numerous services in addition to those agreed upon and did not pay for them accordingly.

---

[3] The stop payment request is dated April 13, 2005, and signed by Madeleine Rojano, wife of Mr. LaManna and a co-debtor in the underlying bankruptcy case. Debtor's Exh. B.

3

After several disagreements over the cost of the project, the final one occurring after he tendered the check to RPH,[4] it was agreed that the debtor should immediately stop work without completing the project. The debtor contends that when the decision was reached to stop work, he advised the homeowner that she would be responsible for paying the subcontractors, and based upon the assumption that she would in fact pay the subcontractors directly, he stopped payment on the check.

## DISCUSSION

In a chapter 13 case, a debt specified under § 523(a), with limited exclusions, is excepted from discharge. 11 U.S.C. § 1328(a)(2). Section 523(a) provides that an individual debtor will not be discharged from any debt

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or]
> (B) use of a statement in writing–
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive[.]

11 U.S.C. § 523(a)(2).

I.    RPH's Claim Under Section 523(a)(2)(A)

Under § 523(a)(2)(A), a creditor seeking to except a debt from discharge on the basis of fraud must establish the following: "(1) false representation, (2) knowledge that the representation was

---

[4] The debtor's testimony as to the exact time that the agreement to stop work on the project was reached is unclear. The court assumes that the decision was reached after the check was tendered to RPH because the debtor would have had no incentive to see that the plumbing work was completed once the decision to walk off the job was made.

4

false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of damages." Nunnery v. Rountree (In re Rountree), 478 F.3d 215, 218 (4th Cir. 2007). Each of these elements must be established by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991). Exceptions to discharge are construed narrowly "to protect the purpose of providing debtors a fresh start." Foley & Lardner v. Biondo (In re Biondo), 180 F.3d 126, 130 (4th Cir. 1999).

As to the first element of fraud, RPH asserts that the check itself constituted a false representation, because the debtor never intended to permit the check to clear his account. RPH did not present any evidence of verbal or written representations made along with the tendering of the check. The court notes that the vast majority of "bad check" cases involve checks that were worthless when written because the account on which the check was drawn contained insufficient funds to honor the check. Although this case involves a check for which the debtor had funds in his account when tendered, but thereafter stopped payment, the one important common factor for analysis is that the check ultimately does not clear the bank – the "representation" that the check will be paid is false.

In considering whether a bad check constitutes a false representation, most courts hold that the issuance of a bad check *alone* does not constitute a false representation and thus is not sufficient to render a debt nondischargeable. Fulcher v. Cooper (In re Cooper), Adv. Pro. No. L-09-00035-8-AP (Bankr. E.D.N.C. Dec. 3, 2009); Seery v. Basham (In re Basham), 106 B.R. 453 (Bankr. E.D. Va. 1989); New Austin Roosevelt Currency Exch., Inc. v. Sanchez (In re Sanchez); 277 B.R. 904 (Bankr. N.D. Ill. 2002) (citing to Williams v. United States, 458 U.S. 279 (1982), a check-kiting case, for the general proposition that a check is not a factual assertion or statement of intent); McAdams, Inc. v. Childers (In re Childers); 311 B.R. 232 (Bankr. E.D. Wis. 2004) (holding that

"presentation of a check is neither an express or implied representation that the check is good"). In this case, without evidence of any representation made by the debtor accompanying the delivery of the check, the court finds that the issuance of the check to RPH, without more, does not constitute a false representation within the meaning of § 523(a)(2)(A).

Even if a check may serve as an implied false representation in and of itself, as some courts hold,[5] RPH would still bear the burden of showing that the debtor tendered the check with the intent to deceive RPH. In considering intent, "[b]ecause direct proof of intent is seldom available, the court in a dischargeability proceeding may infer the debtor's intent or lack of intent from the surrounding facts and circumstances." Riddle Farm Equip., Inc. v. Boles (In re Boles); 2005 Bankr. LEXIS 1092, *11, 2005 WL 1288106, *4 (Bankr. M.D.N.C. Apr. 11, 2005) (citations omitted). "The fraudulent intent necessary to render a debt dischargeable must exist at the inception of the debt." Georgetown Vill. Apartments, v. Fontana (In re Fontana), 92 B.R. 559, 561 (Bankr. M.D. Ga. 1988).

RPH relies in large part on the chronology of events to support its contention that the debtor intended all along to stop payment on the check tendered to induce it to complete the plumbing job. RPH argues that the debtor must have been planning to stop payment on the check when it was tendered because he did so only two days after delivering the check and only one day after RPH re-started and completed its work. Based on the evidence presented however, the court is unable to find that RPH has shown that the debtor had the requisite intent to deceive RPH at the time the check was tendered because the debtor has an equally, and perhaps more, plausible explanation for the sequence of events. He states that he delivered the check with the intent to make payment, proceeded to

---

[5] See Microtech Int'l, Inc. v. Horwitz (In re Horwitz), 100 B.R. 395, 397 (Bankr. N.D. Ill. 1989) (citing cases in this regard although ultimately taking the opposite position).

engage in disputes with the homeowner which resulted in a decision to stop work, advised the homeowner that she would thereafter be responsible for payment of the subcontractors and then stopped payment on the check.[6] The evidence tends to support the debtor's rendition of the circumstances. The debtor had sufficient funds in his account on April 11, 2005 (See Pl.'s Exh. 4), the day the check was delivered, as was confirmed by a representative of RPH on that date. Additionally, the debtor's acrimonious relationship with the homeowner eventually reached a boiling point causing him to stop work abruptly.[7] It follows that the decision to stop work on the project occurred after the debtor tendered the check to RPH, as did the decision to stop payment on the check. The converse could not be true, since the debtor would have no reason to induce RPH to complete work on a project that had already been halted.

This case differs from dischargeability cases in which a clear benefit is received by the debtor. For example, in Windows Off Washington, LLC v. Callahan (In re Callahan), the debtors paid their caterer the balance due on the day of their wedding reception, but did not have sufficient funds to cover the check, and stopped payment on the check two days later. 457 B.R. 25 (Bankr. E.D. Mo. 2011). The court held that the debtors' sole intent was to deceive the caterer into providing catering services for their reception, rendering the debt nondischargeable under § 523(a)(2)(A). The debtor here received no benefit from RPH's continued work; only the homeowner did. Likewise,

---

[6] Actually, the stop payment request was signed by the debtor's wife, Madeleine Rojano, and not the debtor. Debtor's Exh. B.

[7] The homeowner wrote the North Carolina Licensing Board for General Contractors on April 18, 2005, seeking information on filing a complaint with the Board. See Debtor's Exh. A. On February 16, 2006, the debtor's corporation, Empire Interiors, Inc., was enjoined by the Wake County Superior Court from practicing general contracting without a license, in an order that references the debtor's contract with this particular homeowner. See Pl.'s Exh. 6.

in Kline's Serv. Ctr., Inc. v. Fitzgerald (In re Fitzgerald), the debtor tendered a worthless check to an automobile repair facility, in exchange for the release of his car, and later stopped payment on the check. 109 B.R. 893 (Bankr. N.D. Ind. 1989). In that case, the debtor had also told the repair facility that recently received insurance funds would be earmarked for payment of the repairs. The court found the debt nondischargeable, holding that the debtor's course of conduct evinced an intent to deceive.

In the present case, the chronology of events and the evidence as a whole is insufficient to establish that the debtor induced RPH to provide plumbing work with no intention of paying for the services, i.e., with intent to deceive. At most, the debtor's belief that the homeowner would be responsible for paying unpaid subcontractors such as RPH was an ill-advised assumption, rendering the choice to stop payment on the check a bad one. That bad decision, nevertheless, does not constitute fraud for purposes of § 523(a)(2)(A). RPH therefore has not met its burden under this section to support a finding of nondischargeability as to the debt.

II.     RPH's Claim Under Section 523(a)(2)(B)

Under § 523(a)(2)(B), a debtor shall not be discharged from debts associated with false written statements concerning the debtor's financial condition, made with the intent to deceive, and on which the creditor reasonably relied. 11 U.S.C. § 523(a)(2)(B). The court views RPH's argument that the debtor's check constitutes a false writing as similar to its argument under § 523(a)(2)(A): that the debtor's check alone constitutes a false statement sufficient to except the debt from discharge. The court finds that a check, standing alone, is not a "statement in writing" relating to the financial condition of the debtor for purposes of § 523(a)(2)(B). See Mega Enters. v. Lahiri (In re Lahiri), 225 B.R. 582 (Bankr. E.D. Pa. 1998) (holding that a check is not a statement in writing

8

for purposes of § 523(a)(2)(B), and noting that "[c]hecks are not statements supplying information but are negotiable instruments, a form of contract, which evidence debt"). Accordingly, RPH cannot meet its burden of proof under this section.

III.   Debtors' Motion to Avoid RPH's Judgment Lien

The debtors own their residence located at 290 Bear Tree Creek in Chapel Hill, North Carolina, as tenants in common. The debtors purchased the property as tenants in common before they were married. Based on RPH's November 18, 2005 judgment against the male debtor, RPH holds a judicial lien against the male debtor's undivided one-half interest in the residence. The amount of the lien was $18,641.32 as of the petition date. The property is subject to a deed of trust held by OneWest Bank in the amount of approximately $507,000.[8] The male debtor testified that the approximate fair market value of the property is no more than $500,000 and no testimony to dispute that valuation was offered. The debtors cumulatively claimed an exemption of $60,000 in the subject property,[9] and moved to avoid the lien pursuant to § 522(f).

Under § 522(f)(1)(A), a debtor may avoid a judicial lien to the extent that it impairs an exemption to which the debtor would have been entitled. Section 522(f)(2)(A) provides that "a lien shall be considered to impair an exemption to the extent that the sum of –

   (i) the lien;
   (ii) all other liens on the property; and
   (iii) the amount of the exemption that the debtor could claim if there were no liens
   on the property;

---

[8] BB&T held a second lien, which has previously been stripped from the property.

[9] See Schedule C-1. Under North Carolina law, each debtor may claim an exemption in real property used as a principal residence in an amount up to $35,000. N.C. Gen. Stat. § 1C-1601(a)(1).

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A).

Courts have applied this section under circumstances where a judgment lien attaches against only one co-owner of property held as tenants in common, or a similar form of co-tenancy, in one of two ways. Some courts use the entire indebtedness under the consensual lien in the equation, while only using one-half of the value of the property in strict compliance with the statutory language. See, e.g., In re Cozad, 208 B.R. 495 (B.A.P. 10th Cir. 1997); In re Piersol, 244 B.R. 309 (E.D. Pa. 2000). Others, in an effort to prevent a perceived windfall to the debtor, only use one-half of the indebtedness in the equation. See, e.g., In re Jeffries, 2002 WL 202108 (Bankr. M.D.N.C. Jan. 31, 2002); In re Lehman, 205 F.3d 1255 (11th Cir. 2000). The court does not have to decide here which line of cases to follow because either method will result in impairment of the exemption and resulting avoidance of the lien.

Using the Entire Indebtedness

| | |
|---|---:|
| One West Deed of Trust | $507,000.00 |
| RPH Judgment Lien | 18,641.32 |
| Debtor's Exemption | 30,000.00 |
| Total | $555,641.32 |
| Compared to FMV of Interest | $250,000.00 |

Using One-Half of the Indebtedness

| | |
|---|---:|
| One West Deed of Trust | $253,500.00 |
| RPH Judgment Lien | 18,641.32 |
| Debtor's Exemption | 30,000.00 |
| Total | $302,141.32 |
| Compared to FMV of Interest | $250,000.00 |

Because this sum of the liens and exemption amount exceeds the value of the property under both methods, the judicial lien impairs the debtors' exemption in their residence and the lien of $18,641.32 may be avoided in its entirety. In chapter 13 cases, however, judicial liens may be avoided under § 522(f) only upon confirmation. In re Allred, 45 B.R. 676, 678 (Bankr. E.D.N.C. 1985).

Accordingly, if the debtors' plan is confirmed, an order shall be entered avoiding the judicial lien of Raleigh Plumbing & Heating, Inc. A separate judgment will be entered regarding dischargeability.

**SO ORDERED.**

**END OF DOCUMENT**